# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEREK JOSEPH BAILEY,

        Defendant-Appellant.

UNPUBLISHED
July 25, 2017

No. 333073
Leelanau Circuit Court
LC No. 15-001878-FH

Before: MARKEY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his conviction of two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c (multiple variables). The trial court sentenced defendant to concurrent prison terms of 120 months to 180 months. We affirm.

## I. BACKGROUND FACTS

PT, defendant's stepdaughter, testified that beginning when she was 10 or 11 years old, defendant began to sexually assault her. She described incidents of sexual touching, manual stimulation, and oral penetration. She also testified that defendant had her watch pornography in his presence. PT's sister and defendant's other stepdaughter, DT,[1] testified that defendant used social media to facilitate sexual activity between the two when they were in different locations in the same house. DT also testified that he used his laptop to broadcast her performing oral sex on him. Several electronic devices were seized and analyzed during the course of the investigation.

## II. ANALYSIS

## A. RAPE-SHIELD STATUTE

Defendant appeals two evidentiary rulings based on disallowed cross-examination of DT pursuant to the rape-shield statute, MCL 750.520j. Defendant makes no argument, nor does the record show, that this testimony was relevant to his being convicted for conduct against PT.

---

[1] The victim in Docket No. 332984.

-1-

Thus, defendant's arguments on this point, including his claims that exclusion of this testimony violated his right to due process and his right to confrontation, are moot. See *Madson v Jaso*, 317 Mich App 52, 67 n 9; 893 NW2d 132 (2016) ("An issue is moot and generally will not be reviewed if this Court can no longer fashion a remedy for the alleged error."); see also *People v Baugh*, 249 Mich App 125, 129; 641 NW2d 283 (2002) (moot issues generally not reviewed).

## B. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor engaged in misconduct by improperly vouching for the credibility of PT, DT, and their mother and by attacking his credibility. Defendant did not preserve this issue below, so we review it for plain error that affected his substantial rights. *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004).

We review claims of prosecutorial misconduct on a case-by-case basis, viewing the alleged misconduct in context to determine whether the defendant was denied a fair and impartial trial. *People v Steanhouse*, 313 Mich App 1, 32; 880 NW2d 297 (2015), lv gtd on other grounds 499 Mich 934 (2016). A prosecutor may argue a witness's credibility or lack thereof based on the facts in evidence and all reasonable inferences that can be drawn from the evidence. *Id.* at 33. Nonetheless, a prosecutor must "refrain from suggesting or implying that he or she has special knowledge regarding whether a witness is worthy of belief." *Id.*

The prosecutor's remarks in this case were not improper because they were responsive to defense counsel's attack on the credibility of prosecution witnesses in his closing argument, and they followed from the evidence. Defense counsel argued in closing that PT said she wanted to be a fantasy writer and suggested that she did just that on the stand. He further described DT's disclosures to her friends as "camp stories" and likened both girls to the accusers in the Salem witch trials. The prosecutor did characterize defendant as lying when he denied the allegations, but this is implicit in the prosecution itself. See *id.* at 33-34 (concluding that the "prosecutor's characterization of defendant's account of the criminal episode as a lie or a 'story' did not deprive defendant of a fair and impartial trial").

Moreover, the trial court instructed the jury that it must evaluate the evidence, including whether it believed the witnesses, that the lawyers' statements and arguments were not evidence, and that the jury should evaluate witness credibility. "[J]urors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

## C. SENTENCING

### 1. OFFENSE VARIABLES

Defendant challenges the scoring of offense variables (OVs) 9, 10, and 14.

We agree with defendant that the trial court erroneously scored OV 9 at 10 points for placing two victims in danger where the charged offense conduct did not endanger DT. "Offense variable 9 is number of victims." MCL 777.39(1). Placing two to nine victims "in danger of physical injury" adds ten points to the total OV score. MCL 777.39(1)(c), (d). PT's testimony about the two incidents underlying the convictions gives no indication that DT was present or otherwise in "danger of physical injury" when either incident occurred.

We disagree, however, that the trial court incorrectly scored OV 10 and OV 14. "Offense variable 10 is exploitation of a vulnerable victim." MCL 777.40(1). Fifteen points can be scored for "predatory conduct," defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(1)(a), (3)(a). The trial court rejected defendant's challenge to the scoring of OV 10 at 15 points rather than 10 points, finding "that the massive age difference, the role as a stepfather," and the behavior "occurring within the home" constituted "predatory conduct" justifying a score of 15 points for predatory conduct.

The trial court's remarks about defendant's and PT's relative ages and domestic relationship, in addition to the conduct having occurred in their home, reflect the circumstances of the preoffense conduct that facilitated defendant's ability to exploit PT's vulnerability. PT testified to one incident in her bedroom when defendant was putting her to bed. Defendant created the setting for the other incident by letting PT stay up and watch television with him. During both encounters, defendant took advantage of PT's young age and their isolation in different parts of the home to sexually abuse her. See *People v Witherspoon*, 257 Mich App 329, 333-336; 670 NW2d 434 (2003) (affirming the scoring of OV 10 at 15 points for predatory conduct because "the *timing* of the assault (when no other persons were present) and its *location* (in the isolation and seclusion of the basement) are evidence of preoffense predatory conduct").

Defendant argues that the three facts identified by the trial court—the age difference between defendant and PT, defendant's role as PT's stepfather, and conducting the behavior inside the home—warrant only 10 points under MCL 777.40(1)(b). Defendant's argument fails to recognize that the conduct listed in § § 40(1)(b) can also support a score of 15 points under § 40(1)(a) where, as here, the conduct meets the definition of predatory conduct.

Ten points can be scored for OV 19 when the defendant "interfered with the administration of justice." MCL 777.49(1)(c). "[B]ecause the circumstances described in OV 19 expressly include events occurring after the completion of the sentencing offense, scoring OV 19 necessarily is not limited to consideration of the sentencing offense." *People v Smith*, 488 Mich 193, 195; 793 NW2d 666 (2010).

Two of the electronic devices seized and examined were iPads, one an iPad mini. The iPad mini was reset on the morning the police obtained and executed the search warrant, which was sometime after defendant admittedly became aware of a warrant out for his arrest. Similarly, defendant's presentence investigation report states that information on the iPad was "wiped" by defendant and was not recoverable. Defendant admitted to resetting the iPad mini and did not challenge the accuracy of the relevant statements in the PSIR about the iPad. See *People v Ratkov (After Remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993) ("The contents of the presentence report are presumptively accurate if unchallenged by the defendant."). We conclude that resetting the iPads constituted interfering with the administration of justice.

Because rescoring OV 9 does not alter the sentencing guidelines range, MCL 777.64; the error is harmless. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required.").

## 2. UPWARD DEPARTURE SENTENCE

Defendant also challenges the trial court's upward departure from the guidelines. The sentencing guidelines range was 36 to 71 months. The Court reviews a "defendant's sentence for reasonableness." *Steanhouse*, 313 Mich App at 42. The governing standard for assessing reasonableness and whether the trial court abused its discretion in sentencing a defendant is "the principle of proportionality" described in *People v Milbourn*, 435 Mich 630, 650-661; 461 NW2d 1 (1990). *Id.* at 47-48. "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014).

For a sentence to be reasonable under the principle of proportionality, the sentence should " 'be proportionate to the seriousness of the circumstances surrounding the offense and the offender' and should take 'into account the nature of the offense and the background of the offender.' " *Steanhouse*, 313 Mich App at 45, quoting *Milbourn*, 435 Mich at 636, 651. Trial courts may depart from the guidelines in either direction if the recommended guidelines range does " 'not adequately account for important factors legitimately considered at sentencing,' " but a departure that relies on factors already reflected in the guidelines range may signal an abuse of discretion. *Id.* at 45-46, quoting *Milbourn*, 435 Mich at 659-660. " 'Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality.' " *Id.* at 46, quoting *Milbourn*, 435 Mich at 659-660.

In departing from the guidelines, the trial court discussed defendant's "lack of candor," "lack of admission," "lack of remorse," and "lack of empathy for the victims." The trial court described defendant as "narcissistic" and "self-centered." It stressed he could not "answer a simple question without going on and on about" himself. Even, when the trial court twice asked defendant to talk about his daughters at sentencing, defendant twice answered, "I'm getting there" while continuing to describe his own experience of the trial, the police handling of the investigation, and his own parents and sons. The court also highlighted defendant's inability to "acknowledge the behavior." See *People v Houston*, 448 Mich 312, 323; 532 NW2d 508 (1995) (approving of the trial court's reliance, in part, on the defendant's lack of remorse when departing upward from the guidelines).

Defendant maintains that the departure sentence was unreasonably harsh because he had no criminal history. This argument ignores the fact that the guidelines scored PRVs 1 through 6 at zero points, which reflects the absence of a criminal history.[2]

The trial court also expressed its "clear understanding and belief" that defendant was "a predator," "a pedophile if not some sort of a sexual addict," and "dangerous to other people." In light of the fact that defendant was convicted in Docket No. 332984 of sexually abusing DT, for

---

[2] MCL 777.51 (prior high severity felony convictions), MCL 777.52 (prior low severity felony convictions), MCL 777.53 (prior high severity juvenile adjudications), MCL 777.54 (prior low severity felony convictions), MCL 777.55 (prior misdemeanor convictions or prior misdemeanor juvenile adjudications), and MCL 777.56 (relationship to criminal justice system).

which defendant was sentenced the same day as the instant case, we conclude that the trial court properly justified the extent of the departure in this case. *Steanhouse*, 313 Mich App at 45-46.

We affirm defendant's convictions and sentences.

/s/ Jane E. Markey
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra